THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. WIGBERTO ACOSTA TORRES, Defendant and Appellant.

No. CR-65-53.     Decided December 8, 1965.

*María E. Medina de Acosta, Santos P. Amadeo,* and *José Rafael Gelpí* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *J. F. Rodríguez Rivera, Assistant Solicitor General,* for The People.

MR. JUSTICE RIGAU delivered the opinion of the Court.

The events occurred one afternoon in the year 1963 at a home in Hato Rey, Puerto Rico. The husband had gone out. His wife and their little eight-year-old daughter remained at home.

About 3:30 p.m. Milagros Jiménez Medina enters the living room pretending to be a kitchen-utensils saleswoman. The housewife, Ana Rosario de Torres, tells her that she does not want to buy anything and waits for her to leave. Instead, the latter "pulled out a chair," the lady testified, "sat down, asked for a glass of water and I sent the little girl to the kitchen to fetch the glass of water." Meanwhile, Mrs. Torres tells Milagros, "Gosh, I know you." Milagros was wearing dark glasses. She remained silent. The girl arrives with the glass of water. The mother scolds her for bringing the glass without a saucer or tray. She tells her that that is not the correct way to serve visitors. After drinking the water Milagros asks permission to go to the bathroom. Mrs. Torres is a little surprised, but she consents.

Milagros comes out of the bathroom and stands by the dining-room table. She took off her glasses. Then Mrs. Torres recognizes her and tells her so: Some years ago Milagros used to come, once in a while, to that house to drink water and eat candy because the school she attended was located nearby. Milagros only answers: "I am from Río Piedras." "It makes no difference," Mrs. Torres says, "I know you." Then Milagros walks fast and looking over the railing she addresses some men who were hiding there and tells them:

"You, come in, she recognized me." Two men enter, and behind them two more enter. Mrs. Torres protests their entering the house without permission. Then one of them seized her by the throat and the struggle started.

Mrs. Torres tries to defend herself. They hit her and she falls to the floor. Meanwhile, another seizes the girl by her hair, hits her against the wall and tells her: "If you move from there, we will kill your mother and then we will see what we will do with you." The girl remains there, motionless, terrified, while she watches them attacking her mother, whose face is soon covered with blood. Meanwhile, other men of the group go through the rooms searching the drawers of the furniture. They hurt Mrs. Torres' eye, broke her mouth, and in an effort to make her keep quiet, they hit her head with an iron bar. They cut her and she bleeds profusively but she is not unconscious and continues to offer resistance. The screaming of Mrs. Torres causes the aggressors to flee. The neighbors come. Mrs. Torres is taken to the hospital. The little girl remains "upstairs yelling desperately."

Appellant Wigberto Acosta was one of the four men who participated in that scene. He was accused of attempt to commit robbery and was convicted by a unanimous jury. He was sentenced to serve from 3 to 9 years in the penitentiary.

On appeal he assigns the following four errors:

1. "The court erred in permitting a confession of codefendant Milagros Jiménez Medina, obtained in the vicious prosecution of Milagros Jiménez Medina, a minor, over whom the court lacked jurisdiction."

2. "The court erred in refusing to discharge the jury after permitting codefendant's confession, which incriminated appellant, to pass to the jury."

3. "The court erred in sentencing defendant-appellant on the basis of an information which does not adduce facts constituting attempt to commit robbery."

4. "The court erred in denying appellant's petition to pass the case to the consideration of the probation officer for the purpose of considering a suspended sentence."

If the allegation in the first assignment of error were true and if defendant had requested, and been denied, a separate trial, we would reverse because defendant would have been deprived of his constitutional right to cross-examine a witness whose testimony or confession was adverse to him. *Reyes* v. *Superior Court*, 84 P.R.R. 27 (1961). But the allegation in the first error is not true. Milagros' confession was not offered in evidence, nor did the court permit it to pass to the jury, nor did Milagros testify at any time whatsoever.

Six persons appeared to testify at this trial. The first two were Ana Rosario de Torres and her little daughter, Ana Mercedes, who testified what happened to them at their own home on the day of the events. The third person was detective Luis Alejandro Ortiz, whose testimony we shall consider in detail farther on and who did not take to the jury any confession of Milagros. The fourth person was José Jiménez, Milagros' father, who testified about her age. The fifth person was Judge Ricardo Calderón, who heard the witnesses for the purpose of determining probable cause. The sixth and last person was Julia Pérez, who was arrested as a result of the events, and was taken to the investigating magistrate and released for lack of probable cause against her. Her testimony is not related to the innocence or guilt of appellant. Codefendant Milagros did not testify either verbally or in writing at the trial.

From whence comes the contention of Milagros' confession and the prejudice allegedly suffered by defendant? It arises from the fact that Milagros had told detective Alejandro that she, appellant, and three other persons participated in the events. Was Milagros' admission taken to

the jury? It was not. Let us see below how the events developed in this respect.

After the first two witnesses testified—Mrs. Torres and her daughter—the prosecuting attorney called detective Alejandro to testify. To the routine questions he answered by stating his name, that he is a detective, that he was one on the date of the events, that he knows Milagros Jiménez Medina, that he knows Wigberto Acosta Torres, and that on the day of the events he had something to do with those two persons. He is asked where, and he answered that in the General Police Headquarters. Right after answering the foregoing, the prosecuting attorney addressed the court and said: "Right now, Your Honor, we are going to request the withdrawal of the jury." The judge consents and orders the marshal to withdraw the jury and the jury leaves the courtroom. (Tr. Ev. 153–154.)

While the jury was absent and the Judge having so stated (Tr. Ev. 159), the detective then informed that Milagros told him that Wigberto, Cheché, José Luis, and another person whose name she could not remember participated in the events. When the detective finished his testimony, Mr. Ortiz del Rivero, one of the attorneys for the defense, raised the question that those statements were inadmissible as to appellant herein, and the judge agreed with him. Later on, the other attorney for the defense interrogated the detective and finally requested that the detective be withdrawn to raise certain questions. The detective is withdrawn from the courtroom. The attorneys and the judge confer on the nature of detective's testimony. It was quarter to five and one of the attorneys for the defense requests the continuance of the hearing for the next day. All agree and the hearing is continued for the next day.

The hearing is continued on March 20, 1964. Once more it is requested, this time by the defense, that the jury be withdrawn and it is so done. (Tr. Ev. 174.) After discuss-

ing the point of Milagros' age, to which we will refer hereinafter, the judge asked the prosecuting attorney whether he is going to present detective Alejandro before the jury, and the prosecuting attorney answers no. Then the judge orders that the jury be brought to the courtroom.

We return now to the point of Milagros' age. After Mrs. Torres and her daughter testified—before the jury—and after detective Alejandro was examined—in the absence of the jury—Mr. Ortiz del Rivero informed the judge that it had been discovered "at the last minute" that on the date of the events Milagros was 16 years old and therefore the court lacked jurisdiction over her. It was so verified and the court declared itself without jurisdiction over Milagros. She ceased to be a defendant or codefendant in the proceeding. Milagros never testified or signed any confession or admission which went to the jury.

Milagros had been prosecuted because she had stated she was 19 years old and she so informed the court at the arraignment. As it is known, the law in Puerto Rico is to the effect that a person under 18 years of age may not be charged with the commission of an offense unless, being a minor between the ages of 16 and 18, the Juvenile Court waives its jurisdiction over him for the purpose of prosecuting him as an adult. The "offenses" committed by persons under 18 years of age, like that of Milagros, in this case, are under the jurisdiction of the Juvenile Court. 34 L.P.R.A. § 2001 et seq.

The first two errors assigned were not committed. Appellant was convicted by the jury on the evidence adduced by the two aggrieved parties, said evidence being direct, ocular, admissible, uncontroverted, and believed by the jury.

In the third error assigned it is maintained that the information does not adduce facts constituting attempt to commit robbery. This assignment lacks merit. The informa-

tion states that "illegally, voluntarily, maliciously, and criminally, the defendants entered the residence of Ana Rosario Torres and by means of force, violence, threats, and fear, attempted to take the personal property from said Ana Rosario Torres, in her immediate presence and against her will."

There is nothing vague or uncertain in that information. On the contrary, it may be said that it describes adequately the act committed and it was an attempt to commit robbery and said offense is defined in § 238 of the Penal Code, 33 L.P.R.A. § 851.

Said § 238 provides:

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence and against his will, accomplished by means of force or fear."

By the information defendant was well informed of the offense charged. Not only is the definition of the same sufficient, but also the information itself specifies it is for the offense of "Attempt to Commit Robbery."

Appellant alleges that the Spanish translation of § 238 of our Penal Code, of the corresponding section of the Penal Code of California (§ 211) is not accurate. After examining an identical contention in *People* v. *Ríos Fernandini, ante,* p. 790, we stated the following:

"Section 238 of the Penal Code defines the crime of robbery as the felonious taking of personal property *in the possession* of another, from his person or immediate presence and against his will, accomplished by means of force or fear. In accordance with the foregoing definition of robbery it is beyond question that the information contained sufficient facts to charge as a question of law the commission of the crime of robbery. Appellant contends, however, that § 238 of the Penal Code is an erroneous translation of the definition of the crime of robbery as the same is defined in the English version of the said § 238, which is identical with the definition of robbery of § 211 of California when we adopted said Code. The point lies in that in

the English version of § 238 and in § 211 of California it is said 'personal property in the possession of another,' and the Spanish version says *'bienes muebles pertenecientes a otro'* (personal property belonging to another).

"The Spanish version of § 238 possibly is not the most accurate literal translation of the English text, but essentially there does not exist a difference of such a nature as to make the Spanish version charge a different crime from that of the English version or not charge any crime. The term *'pertenecientes a otro'* used in the Spanish text includes in its general sense the possession in another person. The important thing is that the property does not belong to the defendant himself."

■ In the fourth assignment of error it is maintained that the court erred in denying appellant's request to pass the case to the probation officer in order to obtain a suspended sentence. Appellant believes he is entitled to it. He is not right. The law itself, which creates and establishes the suspended sentence in Puerto Rico, provides that the Superior Court "may" suspend the effects of a sentence entered in certain cases. 34 L.P.R.A. § 1027. It is evident that what the law does is to grant discretion to the trial court to do something which it could not do before: stay the effects of the sentence. Appellant is not entitled to it. Its concession rests in the discretion of the trial court. *People* v. *Rivera,* 79 P.R.R. 831, 832 (1957); *Fernández* v. *Rivera, Warden,* 70 P.R.R. 859, 863 (1950); *People* v. *Emmanuelli,* 67 P.R.R. 626, 633 (1947); *People* v. *Feliciano,* 67 P.R.R. 227, 229 (1947). In *People* v. *Sánchez González,* 90 P.R.R. 192 (1964), we did not state the contrary. What we said therein is that the discretion of the trial court is not absolute and it being a meritorious case we ordered that it be referred to the probation officer. The circumstances of that case and this one are quite different.

■ The circumstances of the case at bar do not justify that we disturb the discretion of the trial court. The decision enjoys the presumption of being just and correct; *People*

v. *Feliciano, supra.* In view of the circumstances of this case we believe so. The fourth error assigned was not committed.

The judgment appealed from will be affirmed.